UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION


FILED
JUN 1 2 2012

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. 12-30034(02)-RAL |
| Plaintiff, | |
| -vs- | REPORT AND RECOMMENDATION FOR DISPOSITION OF DEFENDANT'S SUPPRESSION MOTION |
| INA CROW DOG, | |
| Defendant. | |

## SUMMARY

Ina Crow Dog is charged, as a principal and aider and abettor, with sexually abusing her daughter and another adult female. She has moved to suppress incriminating statements she made to law enforcement officers on *Miranda* and voluntariness grounds. Because her statements were voluntary and obtained after a proper *Miranda* advisement, the Court recommends that the suppression motion be denied.

## BACKGROUND

On October 30, 2011, FBI Agent Oscar Ramirez and Calvin Waln, Jr., a special agent with the Rosebud Sioux Tribe, interviewed Crow Dog about sexual abuse allegations involving her daughter. Crow Dog was in tribal custody at the time. The interview began at about 11:32 p.m. and ended almost two hours later. Ramirez initially obtained biographical information from Crow Dog and then proceeded to inform her of her *Miranda*

rights. Crow Dog said she understood her rights and signed a written waiver of them. She answered questions posed to her and asked some of her own. Eventually, she indicated that she wanted to shut down the interview because she was tired and hungry. Ramirez immediately stopped questioning Crow Dog about the abuse allegations, but inquired whether she would talk to agents in the morning. She expressed a willingness to do so.

The next day, shortly before 10:30 a.m., Ramirez and Waln met with Crow Dog a second time. Because she was still in custody, Ramirez advised Crow Dog of her *Miranda* rights again, using the same form from the interview the night before. Although she reiterated that she understood her rights, she refused to consent to an interview, saying that she was tired. No questioning took place and agents departed minutes later.

Four and-a-half months later, Crow Dog and her husband, Anthony Fast Horse, were charged together (by federal indictment) with five counts of sexual abuse and aggravated sexual abuse in violation of 18 U.S.C. §§1153, 2242(2), 2246(2)(A), 2241(a), and 2. She subsequently moved to suppress her statements. After receiving the Government's resistance to the motion, the Court held a hearing at which it heard testimony and received documentary evidence.

## MIRANDA ADVISEMENT

Crow Dog claims that she was "not properly advised of her rights."[1] Although she does not elaborate on this claim, it is assumed that she contends that the *Miranda*

---

[1] Dkt. No. 48-1.

2

advisement given to her was deficient. The tape recording of the interview[2] though indicates otherwise.

In *Miranda v. Arizona*[3] the United States Supreme Court established certain procedural safeguards that require police to advise a criminal suspect of her rights under the Fifth Amendment before commencing custodial interrogation. There, the Supreme Court said that the suspect must be told that "[s]he has the right to remain silent, that anything [s]he says can be used against [her] in a court of law, that [s]he has the right to the presence of an attorney, and that if [s]he cannot afford an attorney, one will be appointed for [her] prior to any questioning if [s]he so desires."[4] The Court in *Miranda* "presumed that interrogation in certain custodial circumstances is inherently coercive and ... that statements made under those circumstances are inadmissible unless the suspect is specifically warned of [her] *Miranda* rights and freely decides to forego those rights."[5]

The Supreme Court has never insisted that *Miranda* warnings be given in the exact form described by the *Miranda* decision. In the decision itself, the Court said that "[t]he warnings required and the waiver necessary in accordance with our opinion today are, *in the absence of a fully effective equivalent,* prerequisites to the admissibility of any statement

---

[2]*See* Mtn. Hrg. Ex. 3 (June 7, 2012).

[3]384 U.S. 436 (1966).

[4]*Miranda,* 384 U.S. at 479.

[5]*New York v. Quarles,* 467 U.S. 649, 654 (1984) (footnote omitted).

3

made by a [suspect]."[6] The Court later observed that "the 'rigidity' of *Miranda* [does not] exten[d] to the precise formulation of the warnings given a criminal defendant," and that no talismanic incantation [is] required to satisfy its strictures."[7]

Here, Ramirez read out loud to Crow Dog – verbatim – her *Miranda* rights from an advice of rights form. In doing so, he paused after each right and asked whether she understood what he had just read to her. Ramirez made checks on the form as he did this. He also gave Crow Dog the opportunity to read the form to herself. She looked at the form and ultimately signed the consent portion of the same, acknowledging that she read and understood what her rights were. The evidence presented unequivocally shows that Crow Dog was warned, with precision, of all of her rights in accordance with the dictates of *Miranda*.

## VOLUNTARINESS

Crow Dog also claims that her October 30 statements to Ramirez and Waln were involuntary.[8] She argues that despite denying that she was involved in the sexual abuse of her daughter (the alleged victim in Counts I and II of the Indictment) Ramirez persisted in his questioning and ultimately obtained inculpatory statements from her concerning the

---

[6]*Miranda*, 384 U.S. at 476 (emphasis added); *see also Rhode Island v. Innis*, 446 U.S. 291, 297 (1980) (referring to the "now familiar *Miranda* warnings . . . or their equivalent").

[7]*California v. Prysock*, 453 U.S. 355, 359 (1981) (*per curiam*).

[8]*See* Dkt. No. 48-1.

4

abuse. She says that these statements were elicited in violation of her Fifth Amendment rights.

Due process requires that incriminating statements or "confessions" be voluntary.[9] A statement is voluntary if it is "the product of an essentially free and unconstrained choice by its maker."[10] Conversely, "[a] statement is involuntary when it [is] extracted by threats, violence, or express or implied promises sufficient to overbear [the suspect's] will and critically impair his capacity for self-determination."[11]

The totality of the circumstances must be considered when determining whether statements were made voluntarily.[12] When doing so, a court must focus on two factors: the conduct of the agents and characteristics of the suspect.[13] The Government bears the burden of persuasion and must prove, by a preponderance of the evidence, that the challenged statements were voluntary.[14]

---

[9] *See Brown v. Mississippi*, 297 U.S. 278, 285-86 (1936); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973) (a voluntary confession may be used against a suspect, but an involuntary one offends due process).

[10] *Schneckloth*, 412 U.S. at 225.

[11] *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (*en banc*), *cert. denied*, 543 U.S. 1145 (2005); *see also United States v. Aldridge*, 664 F.3d 705, 712 (8th Cir. 2011) (the test for determining voluntariness is "whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne [her] will).

[12] *See LeBrun*, 363 F.3d at 727; *Wilson v. Lawrence County*, 260 F.3d 946, 952 (8th Cir. 2001).

[13] *See LeBrun*, 363 F.3d at 724.

[14] *See United States v. Boslau*, 632 F.3d 422, 429 (8th Cir. 2011); *United States v. Astello*, 241 F.3d 965, 966 (8th Cir.), *cert. denied*, 533 U.S. 962 (2001).

Having considered all of the circumstances surrounding Crow Dog's October 30 interview, the Court finds that the requisite coercive or overreaching conduct necessary to render her statements involuntary is lacking. Several facts support this conclusion.

Crow Dog was 47 years old at the time of the interview, had 14 years of education (including an associate's degree from Sinte Gleska University) and could read and write the English language. She was advised of her *Miranda* rights, said she understood and waived them and agreed to talk to agents about what supposedly happened with her daughter on October 30. Although the interview lasted almost two hours and did not end until 1:28 a.m., Crow Dog was given two breaks and did not complain about being tired until just before the interview ended.

Significantly, at no time did agents make any threats or promises to Crow Dog or yell, raise their voices or become hostile toward her. Nor did they use any force, employ physical punishment or brandish their weapons to get her to talk. She cooperated with agents, initially telling them versions of the night in question that minimized her culpability.

Crow Dog's responses to questions from agents were logical and understandable. While with agents, she was not under the influence of alcohol or drugs and nothing she said or did indicated she suffered from any mental or physical infirmity.

Shortly after the first break, the tone of the interview changed. It became much more accusatory and Ramirez began using deception and other stratagems to get Crow Dog to admit to being a participant in the sexual abuse of her daughter. Ramirez

6

acknowledged that he employed deceptive tactics during the interview, telling her things that were not true in hopes of getting her to confess to what he perceived to be her involvement in the abuse.

Officers use a variety of tactics when conducting interviews of suspects, including claiming not to believe a suspect's explanations, playing on the suspect's emotions, deceiving the suspect and conveying sympathy.[15] None of these tactics, however, render a confession involuntary unless "the overall impact of the interrogation caused [the suspect's] will to be overborne."[16]

Crow Dog, a woman with two years of college education, was willing to implicate herself to some extent in her own daughter's sexual abuse. But she would not admit to everything that Ramirez wanted – such as holding her hand over her daughter's mouth during the abuse – expressing fear, or at least concern, about what Fast Horse and his family might do to her if she said anything more. Given the circumstances, and in particular, her history of domestic abuse with Fast Horse, it is understandable why she chose to do this.

Thus, even in the face of Ramirez's deception and persuasive tactics, Crow Dog stopped short, on her own, of making a full confession. And she ultimately terminated the interview altogether and would not talk to Ramirez or Waln any further – either that night

---

[15]*United States v. Brave Heart*, 397 F.3d 1035, 1041 (8th Cir. 2005); *Astello*, 241 F.3d at 967-68.

[16]*Brave Heart*, 397 F.3d at 1041 (*quoting Jenner v. Smith*, 982 F.2d 329, 334 (8th Cir.), *cert. denied*, 510 U.S. 822 (1993)).

7

or the next morning. The record as a whole demonstrates that Crow Dog confessed to what she did because her conscience prevailed upon her to do so, not because the environment and the nature of the questioning was so coercive that it overbore her will and acutely impaired her decision making capacity.[17]

## CONCLUSION

Crow Dog was advised of all of her rights, waived them and made unconstrained statements to agents, who collectively took no action that could be considered as coercion or overstepping their bounds. The Government has established, by a preponderance of the evidence, that Crow Dog's statements were voluntary under the Fifth Amendment. Her motion – which seeks to suppress her October 30 statements as substantive evidence at trial is therefore without foundation in fact or law.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that Crow's Dog's Motion to Suppress[18] be denied for the reasons, and based on the authorities, stated herein.

---

[17]*See Brave Heart*, 397 F.3d at 1041; *see also Aldridge*, 664 F.3d at 713; *Boslau*, 632 F.3d at 429-30; *United States v. Yazzie*, CR. No. 10-30050-RAL, 2011 WL 590112 at *8 (D.S.D. Jan. 25, 2011); *report and recommendation adopted*, 2011 WL 500004 (D.S.D. Feb. 10, 2011).

[18]*See* Dkt. No. 48.

8

## NOTICE

An aggrieved party must file written objections, within 14 calendar days, to challenge this Report before the assigned United States District Judge.[19]

Dated this 12th day of June, 2012, at Pierre, South Dakota.

BY THE COURT:

/s/ Mark A. Moreno

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[19] *See* 28 U.S.C. §636(b)(1).